**Marjorie Arkison KELLY, Plaintiff,**

**v.**

**JOHN HANCOCK MUTUAL LIFE IN-SURANCE COMPANY, Defendant.**

United States District Court
S. D. New York.

Dec. 29, 1955.

Robert J. McKeever, Port Chester, for plaintiff. William D. Sporborg, Jr., Port Chester, of counsel.

Oeland & Kuhn, New York City, for defendant. George W. Riley, New York City, of counsel.

DAWSON, District Judge.

The question raised by this motion is whether a life insurance policy which was kept in force for death benefits by virtue of the grace period was also kept in force so as to be eligible for dividends payable on the policy on its anniversary date.

■ Both parties state that the facts are not in dispute. This is supported by the motion papers and so the case is an appropriate one for summary judgment, under Rule 56 of the Rules of Civil Procedure, 28 U.S.C.A.

#### The Facts

The following facts exist without substantial controversy:

The defendant (insurer), a Massachusetts corporation, issued a $5,000 policy on the life of the insured payable to the plaintiff. The date of issue of the policy was June 24, 1948. The insured paid all of the premiums in monthly installments of $16.05 up to and including that due on April 24, 1952. He did not pay the installment due on May 24, 1952, or any thereafter.

For 31 days after May 24th, the policy was kept in force by the grace period provision of the policy.[1] On the 25th of these 31 days, the insurer sent to the insured a warning against allowing the

1. The policy provided:
   "*Payment of premiums.*—* * *

"*Grace Period.*—A grace of thirty-one days without interest charge, during

policy to lapse through non-payment of the May 24th installment by June 24th.

On the back of the warning was an "Application For Reinstatement of Policy" form which was signed by the insured on July 5, 1952. This was submitted along with a check for the premium amount of $16.05. It was signed as approved on July 16, 1952 in the space marked "For Home Office Use Only". But on July 15th, the insured had been hospitalized and died of arteriosclerotic heart disease.

In November of 1952, the insurer sent to the beneficiary a check for $639.25 constituting $608 as the "amount of policy" and $31.25 as the "amount of dividends and interest held on deposit". This check was refused by the beneficiary who claims that she is entitled to the full amount of the policy.

Prior to these events, the insurer's board of directors had met on November 13, 1951 and passed resolutions providing for the distribution of surplus funds upon policies which were in force on their anniversaries in 1952.[2] If the policy in this case qualified as being in force, the insured was entitled to $31.25 on June 24, 1952. However, if the policy were in force only as reduced paid-up insurance under the nonforfeiture provisions, he was entitled to a dividend of only $2.23.

### The Issue

The beneficiary has taken the position that she was and is entitled to the full $5,000 (plus the return of the $16.05 submitted with the reinstatement application and $15.20 as the balance unpaid of the $31.25 surplus distribution) on the grounds that the grace period kept the policy in force on the anniversary date and that on that date the company should have applied the surplus distribution to the May 24th installment and thus created a new grace period for 31 days from June 24th during which time the insured died.

### Discussion

The principal question in this case is whether the policy was in force on July 15, 1952, the date when the insured died. The last date on which he paid a premium installment was April 24, 1952. He failed to pay the premium of $16.05 due

---

which time this policy shall remain in full force, shall be granted for the payment of each premium after the first. If the death of the Insured occurs on the due date of any premium or during the days of grace, the portion of any overdue premium required to complete premium payments to the end of the policy month in which such death occurs shall be deducted from the amount payable as a benefit hereunder.

"*Annual Surplus Distribution.*—This policy shall participate in any divisible surplus of the Company while it is in force prior to the commencement of any income payments hereunder unless it is being continued in force as extended term insurance.

\*     \*     \*     \*     \*

"*Application of Accumulated Surplus Distributions to Payment of Premiums and Loan Interest.* If any premium remains unpaid at the expiration of the grace period, the Company shall apply the amount of any accumulated surplus distributions held on deposit under this policy to the payment of the premium in default and to the payment of any arrears of interest on indebtedness to the

Company on or secured by this policy, provided that said deposit is sufficient for such purposes, otherwise to the payment of such premium, or a semiannual or quarterly premium, as the deposit may be sufficient to pay in full. Any such application of such deposit shall be a discharge to the Company for the amount so applied."

2. The directors' resolution provided, in part:

"Voted that there be apportioned and paid or allowed a distribution of surplus funds upon Ordinary insurance policies (including such policies issued on the monthly debit basis) which shall be in force upon their respective anniversaries in 1952, including

\*     \*     \*     \*     \*

"II. Policies issued with premium rates which became effective on or after September 1, 1947.

"The amount of such distribution for policies which shall be in force upon their respective anniversaries in 1952, including paid-up additions but excluding policies under which the nonforfeiture benefit of extended term insurance has become effective, shall be as follows: \* \*"

on May 24th, but under the grace period provision of the policy, the policy remained "in full force" through June 24th. That date was the anniversary date of his policy—an important date for determining his right to participate in the distribution of the surplus voted by the directors' resolution of November 13, 1951. According to the language of that resolution, he had a right to his dividend on June 24th if, on that date, his policy was "in force". Under the 31-day grace period provision of the policy, the policy was not only "in force" but "in full force" on June 24th. Since the amount due on his policy under the resolution was $31.25, the dividend payable on June 24th was more than enough to satisfy the May 24th installment of $16.05.

The contention of the defendant is that the insured was in default for non-payment of premium on June 24th and that as of that date, the policy was in force only as a policy of paid-up insurance under the nonforfeiture provisions of the policy; and that the dividend on such a policy was only $2.23. This involves the question as to what the grace period provision in the policy meant when it states that during this grace period, the policy was "in full force". This provision did not state that the policy was in force for limited purposes only. The language can only be read to mean that it was in force for all purposes of the policy, just as though all premiums had been paid up to date. If this is so, it must follow that the policy was in force for the receipt of dividends, just as though all premiums had been paid up to date. Any other construction would mean that the policy was not in *full* force, but in force only for some limited purposes. The construction urged by the defendant would require the Court to rewrite this provision so that it would read that during the grace period, the policy was in force for $5,000 in the event of death, but only in force for $608 as paid-up insurance for the purpose of dividends. This is not what the policy stated, and the words "in full force" must be taken to have their ordinary connotation and not be subject to any such limitation as the defendant now seeks to read into them. The Court concludes that under the terms of the policy, the insured was entitled, on June 24, 1952, to a distribution from the surplus funds of $31.25.

The next question is whether this dividend distribution payable to the insured should have been used to make good the premium due on May 24, 1952 so as to keep the policy in effect. The terms of the policy provided (see footnote 1.) that if any premium remained unpaid at the expiration of the grace period, the company should apply the amount of any accumulated surplus distributions held on deposit to the payment of the premium in default, and that any such application of any deposit should be a discharge to the company for the amount so applied. Therefore, the company had an obligation under the policy to use this dividend for the payment of any premium in default. If it had followed this provision of the policy, the premium due on May 24, 1952 would have been paid. See *Dividends As Preventing Lapse Of Policy For Non-payment of Premiums*, 1946, 161 A.L.R. 1100. The policy would, therefore, have been paid up to June 24, 1952. At that time, another 31-day grace period became effective, and since the insured died during that grace period, he was entitled to the full benefits of the policy.

Neither the policy nor the dividend resolution restricted payment of dividend distributions to policies on which there had been no default in the payment of premiums. The policy does not provide that upon default in payment of premium and during the grace period, the policy became one for paid-up insurance. To so hold would make meaningless the statement of the policy that during this period, it remained "in full force". None of the cases cited in the briefs would impel the Court to reach a conclusion to the contrary.

## Conclusions

1. That on June 24, 1952, the insured was entitled to a dividend distribution of $31.25 on the policy in question.

2. That the defendant was under an obligation to apply the dividend to the payment of $16.05 which was then in default, and having so applied it, the policy continued in full force.

3. That the death of the insured on July 15, 1952 was within the 31-day grace period provided in the policy, and that the beneficiary is entitled to the face amount of the policy.

4. That the beneficiary is entitled to judgment for

|  | $5,000.00—the face amount of the policy |
| Plus | 31.25—the dividend due June 24, 1952 |
| Plus | 16.05—submitted with application for reinstatement |
| Less | 16.05—unpaid premium due May 24, 1952 |
| Less | 16.05—unpaid premium due June 24, 1952 |
|  | $5,015.20—Total |

plus interest thereon from August 29, 1952, the date upon which the defendant received the completed proof of death of the insured. See N.Y. Civil Practice Act, § 480–a.

Settle order on two days' notice.